Invasion of the right of private occupancy requires an incursion. That's what the Sterling Builders case says. A physical incursion? Yes. Who owned the parking lot? The city of Martinez. And at the end of the case? Because there was no physical incursion. That's what we contend, Your Honor. That's what we contend. Judge Conte purported to follow the story of the Sterling Builders case, and he quoted from it liberally, but then proceeded, in our view, to depart from the holding of that case by essentially saying the right to continue operating your business and have your establishment remain accessible to the public are arguably part of those rights associated with the individual's active inhabiting the premises. He also said the right to private occupancy would seem to include the right to stay in the building and operate the restaurant. If we go back and look at the complaint, which is, I believe, the excerpt of the record, page 18, all that Captain Blithers complained of was its patrons not having access to the restaurant. Captain Blithers never complained that it did not have access to the restaurant. So even Judge Conte's Invasion requires going into something. It requires an incursion. The Sterling Builders case made that very clear. Let me ask you a question. The evidence shows that the parking lot was flooded with water from ankle to knee deep. I believe that's correct, Your Honor. If the water all the way around the parking lot is flooded ankle to knee deep, is it Can the district court make an assumption there's water underneath the restaurant? I don't believe so. The district court did. The restaurant is elevated. And if there was water underneath the restaurant, that's not what even causes the damage to Captain Blithers. You could have restaurant or water, whether it's five feet below the restaurant or five inches below the restaurant. The injury complained of here is the denial of access by the patrons and the damage is the loss of profits. The water underneath the restaurant had nothing to do with loss of profits. Well, the invasion issue is the one I'm getting to. And at least at a step, at least at a step, there was an assumption made that there was water under the restaurant, some evidence that it didn't get up to the first step. Correct. Now, what I'm trying to understand is why wasn't an invasion underneath the building, the restaurant, an invasion of the building? The restaurant sits over the water some height. I don't know exactly how high it is. The space underneath the restaurant is not what's leased. That's just open air. Is it sort of like a restaurant on poles? That's my understanding, Your Honor. So there isn't underneath it a basement area that you can store things? Correct. And there isn't a flat floor. It's actually elevated on poles? It's elevated on poles, and the tide goes right in there and flows right out. Have you seen this? No, I have not, Your Honor. I've seen it. You say it's your understanding. On what is the basis of your understanding of the time it's seen it? Based on my discussions with the lawyer from my office who has seen it, who is not  Give us some help in the brief to tell us that. I mean, is there anything in the record that shows us? There is something in the record that shows that it was elevated above, and I have a citation of that which I'll be happy to furnish the Court in my rebuttal, Your Honor. And is the discussion elevated above mean elevated above by poles rather than just elevated above by a mound that it's built upon? It says elevated. I'd have to look to verify whether it has the detail that Your Honor inquires about. All right. That would be helpful. The only other point I would like to make on the invasion issue is I think the Court needs to pay attention to the Supreme Court of California's decision, the Kazi v. State Farm case. That's a case where what the Court said was it was an invasion of an easement, and the Court said that an easement, that invasion does not qualify as either personal injury or property damage. What the Court looked to in that instance was it looked to the nature of the damage itself is not the type of damage that amounts to a wrongful injury or eviction or invasion. That damage does not automatically convert a non-covered injury into a covered injury. With regard to the Merpad case that the Court has so graciously indicated a reason that it would consider, we believe the case is right on point. I counted this morning. I may have been a little bit tired, but I think there are 14 different times where the policy form uses the word person in isolation and 18 times where it uses the phrase personal organization. We think it clear that under Justice Crosky's decision in the Merpad case that in applying the rules of contractual interpretation to that provision, it's clear that the word person in the phrase persons organizations must have different meanings. The city has several arguments, each of which I'd like to take a moment to refute. First, the city cites some language from the declarations page of the 1996 policy that's not even in effect for a different restaurant that uses the phrase additional protected persons. First of all, again, it's from a different policy that's not even in effect, in addition to which it's a different policy form. When you look at a 22-page policy form and apply the rules of contractual interpretation, we consider that it makes sense to attempt to ascertain the meaning of those terms from the various different provisions of that form itself. The city also cites a non-owned auto coverage. Again, that's a different form, and I would point out that organizations can't drive cars, at least we hope not. As to the claim that, well, gee, the notice provision says you must give us names and addresses of persons injured, what it says is what it means. What it means is if the insured fails to give notice of an injury to an organization, it's not a breach. Also, the city asserts that Captain Blyther's employees are defined as lessees under the lease. That's true. Captain Blyther's employees are not plaintiffs in the case. There's no indication that Captain Blyther's has standing to raise their rights for recovery of personal injury, and such claims would not have been made in the complaint. And lastly, the city claims the coverage would be illusory where the insurer knows that the only possible claim would be by a business organization. There's no evidence that New Hampshire knew that the only possible claim could be by a business organization, and, in fact, that is simply not true. If Captain Blyther's did something to perhaps one of his neighbor's properties or its neighbor's properties, forgive me, that could constitute some type of personal injury if it's an individual who has a property and something that Captain Blyther's does causes a wrongful entry or eviction or other invasion of private right of private occupancy, coverage would apply. Something like that is not illusory. One other point I would like to make, I've seen this raised in other cases as well as in the briefs of the appellee in this case, the claim that, well, gee, if something amounts to nuisance, it amounts to a personal injury. I would urge the Court to go back and look at the definition of personal injury. The word nuisance is nowhere to be found. What some of the cases say is, in attempting to ascertain a meaning of certain words in the provision, it says, well, for instance, this could amount to a nuisance. But those cases do not say that every nuisance is automatically an invasion of the right of private occupancy or a wrongful entry. Clearly, many things amount to a nuisance which never at all invade the property. I can think of several statutes in California such as the Red Light Abatement Act. Nuisances are declared involving gang members who never invade property. Nuisances can be merely unsightly property. It can be wrecked cars. Nuisances can be almost anything. It can be denial of light. All these things can amount to nuisance, but they would not necessarily qualify as an invasion. And Sterling Builders is very clear in saying that an invasion requires an incursion into the property, and we simply do not have an incursion here. Well, the question before Judge Cote was on summary judgment. Is that right? Yes, Your Honor. So the issue was whether there was a triable issue of fact on whether there was a physical incursion into the lease premises, to put it that way. And there would have to be some evidence demonstrating that there was some type of physical invasion. It seemed to think that there was, because it was pretty much agreed that the water was not just in the parking lot. It was also underneath the restaurant itself. And isn't that what he was getting at? And I went back and I looked at the deposition of Alfred Schlett. And it's pretty unclear exactly what happened. Is the floor of the restaurant building in Martinez higher than the level of the ground in the parking lot? Yes. What's the difference? I don't know. Do you have any estimate? No. Do you have to walk upstairs to get from the parking lot to the building? Yes. How many steps? I don't recall. During any of these flooding events, did the water level get up to the height of the floor of the restaurant? No. How close did it get? Answer to the base. And what is the base? The beginning of the stairs leading up to the restaurant. And that's the highest you ever saw it go. Is that right? So it looks like the water was on the stairs at the beginning of the stairs from this. And isn't Judge Coney saying, well, that's enough to at least have a triable issue of fact on whether there was an incursion? I think what Judge – I'm not sure I interpret Judge Coney's decision that way, but I would on exhibit A to the lease itself, which is in the record. You can find – you can see where the restaurant is and you can see where the stairs are, which are some distance away. I don't know if the map is scaling up, but the stairs are some distance away and the parking lot is adjacent to the stairs. What was leased was not the stairs. What was leased was the restaurant. And the restaurant is a confined area in a building, and that's all that was leased. Where is it clear that the stairs aren't part of the restaurant? You'd have to look at the map, which attaches exhibit A to the lease, Your Honor. Exhibit A? Yes, Your Honor. Well, let me ask you a question. If MIRPAD applies, does that do away with all of the issues of the case? Yes, Your Honor. It does away with both wrongful entry as well as invasion of the right of private occupancy, because the word person is a qualifier for both. I assume so, that that would be the linchpin and we wouldn't get any further. That's correct, Your Honor. I have another question just to make sure I understand this case. If I understand correctly, Martinez is an additional assured under the policy the restaurant took out? That's the assumption we're making for purpose of this motion, Your Honor. There's a debate about that, but for purposes of this motion, we're assuming that to be true. And therefore, the restaurant sued the City of Martinez, and the City of Martinez is asking now as an additional assured for attorneys' fees and any damages. Correct, Your Honor. I'd like to reserve the rest of my time. Thank you. Julie. Your Honor, it's Sean Connelly for the City. I'd like to get right to the issue in Sterling, which is the claim that there has to be an invasion of property. In other words, according to Sterling, nothing short of a trespass will trigger coverage here, which is directly contrary to many prior cases. The Martin Marietta case, General Accident case, Fiberboard case, the Zelda case all say that actions of a type other than trespass would be covered. Now, the history of this language is that this was originally seen as two types of claims under prior policy language. If this argument all goes, I assume, to the point that we should not decide to forecast the California Supreme Court's embracing Sterling? Yes. I don't believe that Sterling is correct for the reasons cited in the brief. It ignores other cases, and it does not count by its own rationale. I understand if it's correct or not is not really our question. Our question, if I understand it correctly, would be what's the California Supreme Court likely to do? Is it likely to embrace Sterling, or is it likely to embrace some other line of authority? Right? Yes. And you're saying it's more likely to embrace older cases, which believes the term  The prior cases held that nuisance type of claims would be covered. Yeah, but there are very different kind of nuisance claims. I'm not sure what you mean by different type of nuisance claims. There are claims that, for example, in Martin Marietta, that pollution was allowed to interrupt. There are pollution type claims and so forth, but there's no pollution on this lease property. That's true. And so the pollution exclusion wouldn't apply, and that kind of analysis. Nuisance on the property. Historically, I think it's worth looking at the policy language itself, because historically it started out with language that simply said a wrongful entry or eviction. There was no other invasion language. And those cases did hold that you had to have some sort of physical entry, a trespass. Did California Supreme Court get a shot at Sterling? I don't know whether a petition for review was presented or not. Is this the kind of issue that should be certified? I certainly believe that Sterling was mistaken, given all of the other case law, and I think that resolution of that would be beneficial not only for this case, but other cases in California. I believe there is a – and it created a conflict. Is it your argument that Sterling is inconsistent with the California law? Yes. Is that your position? Yes. That Sterling is the closest factual situation we have to this case? I don't believe that Sterling is factually close at all, because what the Sterling case was concerned with was the plaintiff claimed that the insured had, by means of fraud, obtained an easement which was never used. And the Court's concern was, well, you have a piece of paper which says there is some right to use your property, but no one has ever used it, and this is simply too ephemeral. And, in fact, it wouldn't constitute a nuisance, so certainly the Sterling Court didn't have to go so far as to say nuisance doesn't exist. Well, if that's the case, both the bankruptcy court and the district court relied on Sterling for their opinions. Is it your position we should reverse and send it back for reconsideration because they had the wrong case that they were analyzing their situation with? Well, one of the courts found that Sterling applied and barred the coverage, and the other found that it applied and didn't bar the coverage. That's right. But they both analyzed using Sterling, which you say is an incorrect case. Should we send it back then and say, no, Sterling is not good California law, it's out of step with all of the rest of the California law, therefore, we have to vacate and remand it? That would be an appropriate result, but I believe, based on the existing case law, that this Court can determine that the claim being made in this case clearly is within the coverage because the language includes wrongful eviction, wrongful entry or invasion of the right of private occupancy. Now, at the point that you say there has to be a physical invasion, you are saying that nothing short of trespass will amount to coverage. That eliminates the invasion of right of private occupancy language because you already have a wrongful entry coverage. So you're saying, well, it's wrongful entry, eviction or wrongful entry, period, because nothing short of trespass will ever amount to coverage under this case. So it eliminates. It also treats. You're talking about invasion now. Right. The invasion, other invasion. What is your theory of what invasion is? It is not invasion of property. The way Sterling Court treated it, it's an invasion of property. It's an invasion of the right of private occupancy. Let's start off with telling you, telling me what invasion means. All right. Invasion means nuisance, an interference with the quiet enjoyment, the use and enjoyment of property, which is essentially what a nuisance is. An interference, the physical invasion constituting a trespass is a physical dispossession. It's a temporary or partial dispossession. If it was a nuisance, then why would the policy be talking about invasion? You'd be talking about nuisance. It speaks of invasion of the right to private occupancy, not invasion of property. That's the distinction. The distinction is that it's talking about invasion of a right, and the right that's being invoked here, given that trespass under wrongful entry and eviction have already been discussed, has to mean something other than simply repeating what's already gone before. And it can't be a nuisance because it doesn't say nuisance. It says invasion. Well, it doesn't say trespass, but it's been treated as trespass by looking at the wrongful entry language and trying to determine what did they mean by that. Courts, a number of them, have looked at this language and said, well, wrongful entry, that sounds like a trespass, so we will treat this like a trespass claim. And courts have gone on to say, well, invasion of the right of private occupancy must mean something else because it's not a repetition of the exact same word. Otherwise, we are eliminating words from this policy that are supposed to have meaning. And so it must mean something more. And it's treated as an interference with the use and enjoyment of the property. It's not a physical dispossession. A wrongful eviction is a total dispossession of the property. A trespass is a partial or temporary dispossession where someone goes onto your property and is using it to your exclusion. The invasion language then doesn't involve a dispossession of actual ownership or control over the property, but a loss of use. And that's what the additional language is meant to treat, is an interruption of the use and enjoyment. Invasion usually means something invades. That's true. Something that invaded the restaurant. What invaded the restaurant here? The water invaded the blither's ability to use and enjoy the restaurant. But it didn't invade the restaurant, right? Right. And the policy language does not say invasion of property. It says invasion of the right to private occupancy. Invading a right, for example, if you want to invade someone's right to free speech and you enact a statute which says no one is allowed to make a contribution to a public official, and they say, well, that invades my right to free speech because that's how I make my voice heard, does that mean the city has to then go into people's houses physically and rip up their checkbook? Invasion of rights do not require a physical invasion into someone's property. And again, if what New Hampshire had meant by invasion is trespass only, they could have said trespass or they could have said or other invasion of property. But they didn't. They said invasion of the right of private occupancy. And the right of private occupancy is to be able to use and enjoy that property. And an interference with that doesn't require you to physically go onto their property. But it could equally mean the invasion has to invade the property and then it will invade, take away the use of the property. You're making one step that you don't need to invade the property in order to come within the policy. You don't have to invade the property in order to invade the right of private occupancy. And exactly what you're pointing out is the reason that so many of these courts found that this language was ambiguous. And using interpretive principles applied to insurance policies, where this ambiguity exists, you have to find coverage. If the city decided that they were going to put barriers all the way around the parking lot and not allow anybody in, that's an invasion under your theory? It's an invasion of the right to private occupancy. It's not a trespass if it's not part of the property. And so it doesn't come within the wrongful entry. But it does come within the invasion of private. Invasion, you don't have to have anything touch the restaurant. It doesn't have to be within 100 yards of the restaurant. The restaurant is being invaded. It does not have to physically enter. That's correct. Just as a nuisance does not have to physically enter. It's sort of invasion, isn't it? Well, nuisance cases have been found, for example, where you block people's access to their property. That is perfectly accepted as a nuisance principle. And you have exactly the same thing here. This is barring access. But it doesn't say nuisance. It says invasion. And it doesn't say trespass, but it says wrongful entry. It says invasion. It doesn't have to be a trespass. It has to be an invasion. Right. But wrongful entry doesn't say trespass. It says wrongful entry. But all of the courts have said, well, what do we make of this? How do we interpret this? Well, we look at the law of torts, and what do we see? We see eviction. We know what that means. Wrongful entry, well, that sounds like trespass. That's what we're going to treat it as. So what do we do with invasion of the right of private occupancy? It has to be something different. And looking at the law of torts, you see loss, use, and enjoyment, a nuisance. And that's how the courts have interpreted it, right up to the time of Sterling. And then Sterling said, well, no, I'm, you know, I'm not even going to talk about some of these cases that said you can have a nuisance type of claim. It simply doesn't exist because there are cases which didn't have the other invasion language, which said there wasn't a trespass. So trespass must be necessary. Well, those cases were evaluating the wrongful entry language because the other invasion language didn't exist in those policies. So they have now taken a different policy language and grafted it onto a policy that has other coverage. If we should decide that Sterling Builders controls, it seems that your argument is in trouble because the language in Sterling Builders involved the right of private occupancy, and they ended up saying short of a trespass, an entry, or an intrusion, or an actual occupation, you don't have an invasion. So if Sterling is correct, your argument fails, especially because I heard you concede a couple of minutes ago that the water never got into the restaurant. The restaurant, it did not go into the building itself. Now, what was the relationship of the parking lot and is the entry into the parking lot an invasion of part of Blyther's use and occupancy? Well, I think, as discussed in the brief, the status of the parking lot is a complicated and not very clear item under the lease, but certainly Blyther's did have an interest directly in the parking lot. And so whether the water going on to that ---- Interest, you know, in sort of common street language, an interest in the parking lot, sure. I mean, I've got an interest in 7th Street. Well, but you're not the landlord here. But, you know, it's not ---- Right. It doesn't work that way here, interest. But the lease specifically refers to Blyther's having rights in the parking lot, specifically talking about parking spaces and an acknowledgment, as the declarations indicated, of use for access. So it was not some just generalized public right. It was a very specific right to make this building habitable and usable that that parking lot had to be made available. And if you surround a building with a fence one inch from the property line to say, well, that's not an interference with the right of private occupancy, you get a totally unexpected result from coverage such as this. Let me ask you a question, counsel. If we conclude MIRPAD applies, that ends the case? If the ---- well, there are factual distinctions between the MIRPAD, but if you decide that it applies, yes. Let me ask you a question carefully. If we conclude that MIRPAD applies, that ends the case. Is that correct? Yes. Now, do you have anything to add to your letter of October 7 as to why Blyther says that MIRPAD does not apply? Yes. Looking at the policy language itself, I think that the interpretation of MIRPAD does not make sense because it is attributing the language about that a person occupies to the wrongful entry, wrongful eviction and invasion language. The policy language for this coverage comes in parts. First, it discusses what happens, an interruption of a right, wrongful eviction, wrongful entry, other invasion. And then it qualifies it and says it must be of a room dwelling or premises. So in other words, uninhabited buildings, vacant lots, those kind of things aren't covered. And then it says that a person occupies, and I'll get back to that, and then finally it has to be by the owner. It's not just anybody. What does that a person occupies mean in this context? Well, I submit that at very best it's ambiguous, but what it appears to mean is simply that it has to be an inhabited building that a person occupies. It doesn't say that the person occupies, and it doesn't say a wrongful entry or eviction of a person from private occupancy. The language of this policy does not tie this that a person occupies to the wrongful eviction and wrongful entry. And I think that by comparison, you can look at some of the policies that are cited in the brief that do tie those together. Are you suggesting that the policy in MIRPAD is different from, substantially different from the policy we have involved here? It's not substantially different. There are some differences, but for purposes of this analysis, it has the same basic elements. So, for example, if you look at the language in the Kazi case, which is the California Supreme Court case, wrongful entry or eviction or other invasion of a person's right of private occupancy, the Zelda case, wrongful entry into or eviction of a person from a room or dwelling that the person occupies. These policies tie together the violation of rights and the person occupying it. The Steinbrief case, the general accident case, Titan-Holding, all have that kind of language, that it is the wrongful entry or eviction of a person from a room or dwelling that the person occupies, whereas the language in MIRPAD and in the New Hampshire policy merely talks about a wrongful entry, eviction or invasion of a right and then it speaks of a room, dwelling, or premises, and then qualifies the room, dwelling, or premises as one that a person occupies, meaning that uninhabited buildings, such as were found in the Steinbrief or Wilmington bulk liquid case, won't have coverage because those were unoccupied properties. And, therefore, the that a person occupies ought to be treated as no more than saying that it has to be an inhabited building, but it doesn't say that an organization cannot be covered under this policy. And I think that we have to remember that the purpose of evaluating this is to look at what the intent of the parties were whenever you're looking at a contract such as this. Clearly, that wasn't New Hampshire's notion of what this policy meant, because nowhere did it raise this issue in its rejection of the tender of this case, in the answer to the complaint, in its briefing on summary judgment, on appeal to the district court, or even to this Court. It never raised this issue. We raised it. We thought counsel should be advised of it. As a matter of fact, we thought counsel should raise it. But that doesn't mean we aren't going to consider it. No. I understand that. But what I'm saying with respect to that is that if we're looking for New Hampshire's intent, if they had actually intended this language to exclude companies from having coverage, we would have heard about it before. And the fact is no reasonable policyholder could envision this distinction. The situation here, Captain Blyther's is owned by a man named Al Shalett, who also owns a restaurant in Benicia. They're both seafood restaurants, essentially identical menus. They have the same personnel. They switch back and forth. They're all trained by the same person. And they are they have identical policies from the same company with the identical language. And what is the difference between the two of them? The only difference is in Benicia, Al Shalett signed as Al Shalett doing business as. In Martinez, he signed as Al Shalett as the president and sole shareholder of Captain Blyther's, Incorporated. And he even guaranteed performance under the Martinez contract. So under absolutely identical situation, which makes, which has no significant distinction factually, you get completely different results on coverage because of the fortuity of the form of the lease. Now, in this case, the lease actually has language which says that people who are guests and employees are lessees under the lease. I mean, that wasn't fully evaluated because this issue wasn't raised at the time that evidence was being put to the court. But clearly, applying mearpad comes with results that no reasonable insured would anticipate. Thank you. Thank you, Mr. Connolly. Mr. Wagoner. Thank you. In response to a couple of comments from the Justices, I would point out that the California Supreme Court's trend in all of its recent interpretation decisions is to follow, excuse me, the clear and explicit language of the policy. And the court reads the policy language very literally. If the court looks at, these cases aren't all cited, but the certain underwriters cases, all the pollution cases where they make the distinction between the word claim and the word suit, and all those other types of cases, the court looks very, very carefully at the language of the policy and lets that policy language control. We think that is the clear trend. In response to the court's question, was the Sterling Builders case, was there a petition of the Supreme Court for review? No, there was not. With respect to the inquiry about should this case be certified, we think it's pretty clear under both mearpad and Sterling Builders what the outcome should be. But should the court choose to certify it, I would urge the court to include in one of its questions or the full question the point of the Kazi case, which is, if you look to the damage that the plaintiff is complaining about and determine that the damage is purely economic, that damage alone doesn't convert a non-covered injury into a covered one. So in the event the court does frame an issue or issues to the California Supreme Court, I would ask the court to consider including that concept in order to get a clear answer from that court. The citation to the record that I had referred to, Your Honor, is ER page 4. It turns out it's the same deposition testament that you had read to me earlier. So that's what's in the record from what I can tell. The term invasion, I think we need to note, is different than the term interference. When we normally talk about someone losing a right, such as a constitutional right to free speech, we talk about interference with a right. And interference can be all the different types of losses or impingements that counsel referred to. Why did the policy drafters use the word invasion as opposed to the word interference with a right of private occupancy? The word invasion, as the Court noted in Sterling Builders and as His Honor has also pointed out, contemplates an incursion, a physical incursion. It does not say interference with a right of private occupancy. As to the argument that, well, gee, the courts have equated wrongful entry with trespass, I don't know that I'd go so far as to say they've equated it. What they've said is wrongful entry includes trespass. But there can be other types of entries that would fit within wrongful entry that may not be a trespass. For instance, if someone causes a third person to go onto land, that may be a wrongful entry, but it may not be a trespass. And finally, I would point out that the Merpad case, the argument is there, but when you have, as counsel in a trial-level court, when you have case authorities strongly supporting your position and at the time no case authority supporting what the Merpad court now says is there's a distinction between persons and organizations, you go with what your strongest argument is so as to convince the trial judge, if you can, that solid law supports the position that you're taking to, in essence, make an argument that's not supported by law at the time  And that tends to be a little bit distracting. That doesn't mean the argument is not there. It doesn't mean the argument has been waived. A denial of coverage under Waller preserves all rights of the insurer to assert any issue. And I would point out to the Court that the Waller's decision, it's 11 Cal 4th, page 1, I believe, that was a case where the appellant changed their position on appeal based on a decision of this Court in Intel. And the Supreme Court said that's fine because what we're dealing with here is purely an issue of law. There's really no disputed facts at all involved. And those pure issues of law, we think, would permit a conclusion based on the record before the Court. Unless the Court has any questions, I'll donate my time to the next counsel. You were going to get from the record where I could find a description of the property as to whether it has poles or whether it's just on land. Do you have that for me? The map is page 64 of the excerpts of record, Your Honor. Sixty-four? Yes, Your Honor. Thank you. Thank you very much. Counsel, we appreciate both of your arguments. It's helpful. And it matters as far as it will be submitted.
judges: Wallace, Trott, Rymer